Hillsborough, } No. 3648.
Oct. 7, 1947.

ALBERT H. HUNT *v.* THE GOODIMATE COMPANY.

422

*Thomas J. Leonard* and *Robert E. Earley* (by brief), for the plaintiff.

*Alvin A. Lucier* (by brief), for the defendant.

BLANDIN, J. Although there must be a new trial due to errors in the charge relating to damages, as will be hereinafter shown, it is deemed advisable to discuss other questions which are likely to arise at another trial. The defendant's motions for a nonsuit and directed verdict were properly denied. It appears there was ample evidence from which the jury might find that the plaintiff was induced to relinquish his claim against the defendant on the first contract, and enter into a second contract, on account of the promises and misrepresentations made by the company's agent Lipsky.

The day the new contract was made, on October 20, 1941, the defendant represented to the plaintiff through its authorized agent and president Rubin Lipsky, that it had ample supplies of clothing "hanging on the racks all manufactured" and that "we have plenty to cover the demand, sell them and we will take care of you."

On October 23 the manager of the defendant company wrote the plaintiff to the same effect. Yet less than a week later, on October 29, 1941, the plaintiff received a letter from the company stating that they were out of many of the most essential stocks. From then on the correspondence between the parties, as shown by the exhibits, consisted mainly in a series of requests and pleadings from the plaintiff for samples and goods, and from the defendant evasive replies and promises of deliveries which never arrived.

On one occasion the defendant raised prices on clothing without notifying the plaintiff. The result was that the latter was forced to cancel sales which he had made in good faith at the prices quoted him by the company.

At the time the second contract was made, the plaintiff testified that Lipsky told him in substance he wanted to settle without going to court, and when the plaintiff replied that he was not interested, he

was told by Lipsky, "I will make it an object to you to settle." The plaintiff further testified that he said to Lipsky on this occasion, "I am losing $6,000 which you owe me for illegally breaking the first contract," and, "How about this $6,000 that you owe me on the contract you broke illegally?" To this Lipsky replied, "Never mind that; you will get that back quickly with this new territory which we are going to give you."

There was also evidence that if the defendant could force the plaintiff to resign or otherwise get rid of him, the company could sell directly to customers and thereby avoid paying Hunt a commission.

The plaintiff testified that he never would have settled his lawsuit and made the second contract save for the representations of the defendant, and that he relied upon them. It is true the defendant contradicted much of the plaintiff's testimony upon essential points, but the jury saw both men on the stand. They had a right to accept the plaintiff's version of events, and reject the defendant's, in whole or in part. *Giguere* v. *Railroad*, 86 N. H. 294, 298. The jury were warranted in finding that the defendant never intended to keep its promise to furnish the plaintiff with sufficient goods to sell; that the expressed opinion that Hunt would get the $6,000 back quickly was knowingly false, and made with intent to defraud him; in short that the defendant never intended to keep the second contract and broke it deliberately for the purpose of forcing the plaintiff's resignation and thereby avoiding the payment to him of commissions.

It has long been held in this state that the concealment of an intent not to perform a contract at the time it is entered upon may be a fraud (*Stewart* v. *Emerson*, 52 N. H. 301; *Hovey* v. *Grant*, 52 N. H. 569), and that such fraud is actionable. *Goodwin* v. *Horne*, 60 N. H. 485; Restatement, Torts, ss. 525, 530. See, *Morgan* v. *Morgan, ante,* 116. Also a false statement of opinion if made to defraud furnishes a cause of action. *Sleeper* v. *Smith*, 77 N. H. 337. See also, *Ouilette* v. *Theobald*, 78 N. H. 547, and cases cited.

The defendant's exception to the admission of evidence relating to the terms of the first contract between the parties, the failure of the defendant, prior to 1940, to fill certain orders of the plaintiff, and the amount the defendant claimed in recoupment for advances made to the plaintiff prior to October 20, 1941, appear to be without merit, and must be overruled. In each instance the evidence introduced shed light on the situation leading up to the making of the second contract, and hence was admissible. *Kann* v. *Company*, 85 N. H. 41.

On the question of remoteness the matter was within the discretion of the Trial Judge. *Bennett* v. *Bennett*, 92 N. H. 379; *Dowling* v. *Shattuck*, 91 N. H. 234.

The plaintiff produced evidence that on one of the rare occasions when the company sent him materials he made $347 in three days. At another time he testified when he had the materials he made $210 in two days. There was also other evidence as to the amount of his earnings. There was testimony that the defendant had the stock and could have sent it at other times had he desired. Witnesses testified that the demand for goods during this period was "tremendous" and "unusual," and that Mr. Hunt had excellent territory. The jury did not have to speculate on this evidence and it furnished a sufficiently definite basis for a verdict so far as damages are concerned. Nor was there anything necessarily inconsistent in a verdict for the plaintiff together with an award to the defendant in its plea of recoupment. The jury could properly allow the defendant his damages in recoupment for past advances to the plaintiff, and award the plaintiff a verdict for the losses caused him by the deceit. *Copeland* v. *Reynolds*, 86 N. H. 110.

The exceptions to the Court's charge relating to damages must be sustained. The plaintiff in his brief takes the position that he elected to affirm the second contract. However throughout the trial and in his argument he claimed as damages both the value of the first contract and the commissions which he maintains he could have earned upon the second contract. Under the Court's charge to which the defendant excepted, the jury was apparently permitted to consider both these elements, since they were told in substance they might allow the fair value of the first contract plus lost commissions referred to in argument which could be reckoned with reasonable certainty.

Under the affirmance theory the plaintiff was entitled to recover the impairment in value of the second contract, by reason of the fraud, plus whatever incidental damages the fraud may have caused. *Noyes* v. *Blodgett*, 58 N. H. 502. But he could not recover both the value of the first contract plus the commissions which he would have earned under the second. *Copeland* v. *Reynolds, supra*.

The charge so far as it related to commission profits which could be reckoned with reasonable certainty was correct. *Brown-Wales Company* v. *Barber*, 88 N. H. 103; *Crawford* v. *Parsons*, 63 N. H. 438; *Noyes* v. *Blodgett, supra*; 25 C. J. S. 523, *par*. 44. Yet in the allowance as damages of both the value of the first contract and commissions on the second contract there was reversible error.

This appears to dispose of all questions which may be expected to arise at a subsequent trial. The order accordingly is

*New trial.*

All concurred.